826 So.2d 279 (2002)
The FLORIDA SENATE, et al., Appellants,
v.
Charles R. FORMAN, et al., Appellees.
No. SC02-1813.
Supreme Court of Florida.
September 5, 2002.
*280 Barry Richard of Greenberg Traurig, P.A., Tallahassee, FL, and James A. Scott of Tripp Scott, P.A., Fort Lauderdale, FL, on behalf of John McKay as President of the Florida Senate; George N. Meros, Jr. and Jason L. Unger of Gray, Harris, & Robinson, P.A., Tallahassee, FL, and Miguel De Grandy of Miguel De Grandy, P.A., Miami, FL, on behalf of Tom Feeney, Speaker of the Florida House of Representatives; and Gerald B. Curington, Assistant Deputy Attorney General, and George Waas, Senior Assistant Attorney General, Tallahassee, FL, on behalf of the State of Florida and Robert A. Butterworth, Attorney General, for Appellants.
Joseph M. Hanratty of Forman, Hanratty & Montgomery, Ocala, FL, on behalf of Charles R. Forman and Michael A. Finn, for Appellees.
HARDING, Senior Justice.
We have for review a circuit court judgment certified by the district court of appeal to be of great public importance and to require immediate resolution by this Court. We have jurisdiction. See art. V, § 3(b)(5), Fla. Const. For the reasons expressed below, we reverse the circuit court's judgment.
Charles R. Forman and Michael A. Finn,[1] appellees in this case, filed complaints for declaratory and injunctive relief, claiming that the legislative redistricting plan for the Florida Senate (Senate plan) violates the equal protection clause of article I, section 2 of the Florida Constitution. The Senate plan divides Marion County into four senate districts, and therefore, the appellees argued that the Senate plan constituted an impermissible political gerrymander within the scope of Davis v. Bandemer, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986). After a trial on the matter, the circuit court held that the voters of Marion County constitute "an important political group" and that the appellees demonstrated "intentional discrimination" and an "actual discriminatory effect." The court added that "the voters of Marion County have been completely and utterly disenfranchised." The court's findings were based on its conclusion that Marion County did not receive its fair share of public funding for special projects. In its order, the circuit court granted appellees' petitions to declare the Senate plan unconstitutional. The court acknowledged that it was without authority to fashion a remedy and therefore it left that obligation "with the other branches of government." On appeal, the Fifth District Court of Appeal concluded that the case was one requiring immediate resolution by this Court, pursuant to Florida Rule of Appellate Procedure 9.125.
Earlier this year, this Court issued its opinion in In re Constitutionality of House Joint Resolution 1987, 817 So.2d 819 (Fla. 2002), wherein we found the Florida Legislature's 2002 reapportionment plan to be facially valid. We left open the opportunity for parties to raise as-applied challenges alleging "a race-based equal protection claim, a Section 2 [of the Voting Rights Act] claim, or a political gerrymandering claim in a court of competent jurisdiction." Id. at 832.
In House Joint Resolution 1987, this Court explained the basis for a political gerrymandering claim, as set forth by the Supreme Court in Bandemer:
Under the Bandemer test, a plaintiff raising a political gerrymandering claim must establish that there was (1) intentional discrimination against an identifiable *281 political group and (2) an actual discriminatory effect on that group....
In order to establish that there has been an actual discriminatory effect, the plaintiff must show that: (1) the identifiable group has been, or is projected to be, disadvantaged at the polls; and (2) by being disadvantaged at the polls, the identifiable group will lack political power and be denied fair representation. As the Bandemer plurality explained, "the mere fact that a particular apportionment scheme makes it more difficult for a particular group in a particular district to elect the representatives of its choice does not render that scheme constitutionally infirm." This conclusion is premised on the assumption that "the power to influence the political process is not limited to winning elections" because the elected candidate will still be responsive to the voters in his or her district. "[W]ithout specific supporting evidence, a court cannot presume ... that those who are elected will disregard the disproportionately underrepresented group." The discriminatory effect of political gerrymandering would only be found "when the electoral system is arranged in a manner that will consistently degrade a voter's or a group of voters' influence on the political process as a whole." As the plurality opinion explained, the plaintiff must establish that the discriminated against group has "essentially been shut out of the political process."
Id. at 830 (citations omitted). Pursuant to the framework above, it is clear that there is no basis for the circuit court's ruling in the instant case.
First, the circuit court erred when it found that the voters of Marion County constitute an "identifiable political group." To support their contention that the voters or citizens of a political subdivision can constitute an identifiable political group, the appellees rely on Kenai Peninsula Borough v. State, 743 P.2d 1352 (Alaska 1987). However, Kenai is distinguishable from the instant case, as the basis for the Alaska court's conclusion was that the equal protection clause of the Alaska Constitution grants greater protection to its citizens than does the federal constitution.[2] In contrast, this Court has stated that "[t]here are no provisions in the Florida Constitution relating to apportionment of the legislature more stringent than those of the United States Constitution." In re Apportionment Law Senate Joint Resolution 1305, 1972 Regular Session, 263 So.2d *282 797, 807 (Fla.1972). The appellees have not cited any federal case, nor does our research reveal any, to support the conclusion that voters or residents of a political subdivision qualify as an "identifiable political group" for purposes of a political gerrymandering claim. If we were to allow such a finding, then we would be opening up the floodgates to allow voters and residents of every city, county, or any other political subdivision to raise equal protection claims in the futurea precedent that is neither practical nor logical. For this reason alone, the appellees' claim must fail.
Additionally, the circuit court erred in finding that the appellees' satisfied the second prong of the Bandemer test: that there has been an actual discriminatory effect on the voters of Marion County. The circuit court stated that "the voters of Marion County have been completely and utterly disenfranchised." There is nothing in this record to support this statement. The voters of Marion County have the same rights as all other Floridians to vote for a senator of their choice within their senate districts. The mere fact that Marion County is divided into four senate districts does not deny the voters of Marion County a fair chance to influence the political process.
The appellees' actual complaint is that the Senate plan should be declared unconstitutional because the Legislature ignored traditional principles of redistricting such as compactness and preservation of communities of interest. This is evident by the language in the court's order: "Both Marion County and the City of Ocala clearly fall within the definition of a political subdivision and each has a clear community of interests unique to its population"; "To comply with numerical parity without regard to its recognized commonality of community of interest, the court finds that the preservation of the community of interests intended by the legislature as relates to Marion County is a perversion of that concept and of fundamental fairness." (Emphasis added.) However, in House Joint Resolution 1987, this Court specifically rejected this type of claim: "[N]either the United States nor the Florida Constitution requires that the Florida Legislature apportion legislative districts in a compact manner or that the Legislature preserve communities of interest." 817 So.2d at 831. See also Shaw v. Reno, 509 U.S. 630, 647, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993) ("[T]raditional districting principles such as compactness ... and respect for political subdivisions ... are important not because they are constitutionally required-they are not...."); Senate Joint Resolution 1305, 263 So.2d at 801 ("[T]here is no requirement that district lines follow precinct or county lines.").
Accordingly, for the reasons stated in this opinion, we reverse the circuit court's order.
It is so ordered.
WELLS, PARIENTE, and QUINCE, JJ., concur.
ANSTEAD, C.J., and SHAW and LEWIS, JJ., concur in result only.
NOTES
[1] Both Forman and Finn are Marion County residents.
[2] Kenai is also distinguishable from the instant case on several other bases. The Alaska Supreme Court ruled that parties bringing an equal protection claim under the state constitution need not show "a consistent degradation of voting power in more than one election," rather the "purpose in redistricting will be held illegitimate unless [it] effects a greater proportionality of representation." 743 P.2d at 1372. Moreover, under Alaska's stricter constitutional standard, the court would "not consider any effect of disproportionality de minimus [sic] when determining the legitimacy of the [Redistricting] Board's purpose." Id. While the court found "a voter's right to an equally geographically effective or powerful vote ... to represent a significant constitutional interest," its decision was compelled by the state's "constitutional structure [which requires] that similarly situated communities be treated in a similar manner." Id. at 1371-72 (citing article II, section 19 of the Alaska Constitution, which prohibits local or special acts, i.e., those not reasonably related to a matter of common interest to the whole state, if a general act can be made applicable). Furthermore, the redistricting provision in the Alaska Constitution specifically provides that "[e]ach house district shall be formed of contiguous and compact territory containing as nearly as practicable a relatively integrated socio-economic area" and that "[c]onsideration may be given to local government boundaries" in senate districts. Alaska Const. art. VI, § 6. There are no similar provisions in the Florida Constitution.