831 So.2d 683 (2002)
Representative Corrine BROWN; Representative Alcee Hastings; Representative Carrie Meek; Sallie Stephens; and Senator John McKay, President of the Florida Senate, Appellants,
v.
Robert A. BUTTERWORTH, Attorney General; Jim Smith, Secretary of State; Tom Feeney, Speaker of the House of Representatives; State of Florida, Appellees.
Nos. 4D02-2353, 4D02-2401.
District Court of Appeal of Florida, Fourth District.
October 11, 2002.
Rehearing Denied December 20, 2002.
*684 Ephraim R. Hess and Colleen Kathryn O'Loughlin of Hess & O'Loughlin, P.A., Fort Lauderdale; J. Gerald Hebert, Alexandria, Virginia; and Paul M. Smith, Sam Hirsch and Katherine A. Fallow of Jenner & Block, LLC, Washington, D.C., for Rep. Corrine Brown, Rep. Alcee Hastings, Rep. Carrie Meek and Sallie Stephens.
William R. Scherer and James F. Carroll of Conrad & Scherer, LLP; James A. Scott, Edward J. Pozzuoli and Alexis Yarbrough of Tripp Scott, P.A., Fort Lauderdale, for John McKay, President of the Florida Senate.
Robert A. Butterworth, Attorney General, Tallahassee; Kathleen M. Burgener, Bureau Chief, and Charles M. Fahlbusch, Assistant Attorney General, Fort Lauderdale, for the State of Florida.
Joseph P. Klock, Jr., John W. Little, III, and Arthur R. Lewis, Jr. of Steel Hector Davis, LLP, Miami, for Jim Smith, Secretary of State.
Joseph W. Hatchett, Paul R. Regensdorf, Christopher S. Carver and Richard A. Perez of Ackerman, Senterfitt & Eidson, P.A.; and Miguel De Grandy and Stephen M. Cody of Miguel A. De Grandy, P.A., Miami, for Tom Feeney, Speaker of the Florida House of Representatives.
FARMER, J.
Three members of Congress and a qualified voter have filed a declaratory judgment action in the Circuit Court in Fort Lauderdale challenging the Florida Legislature's reapportionment of their Congressional districts following the 2000 census.[1] They claim that as applied to them the plan deprives them of the equal protection of law by gerrymandering their districts *685 on the basis of political party affiliation. The Circuit Judge dismissed the action on the grounds that the Circuit Court lacks subject matter jurisdiction to hear claims involving the reapportionment of Congressional districts. They now appeal. The President of the Florida Senate also appeals an order denying his motion to intervene after plaintiffs voluntarily dropped him from the suit. We reverse.
In concluding that it lacked jurisdiction, the trial court reasoned that article III, section 16, Florida Constitution,[2] vests the Florida Supreme Court with the power to review reapportionment of state legislative districts only, because the constitutional provision omits any reference to Congressional redistricting within the state. The court also took special note of article I, section 4, United States Constitution, which provides that the time, place and manner of elections for both houses of Congress "shall be prescribed in each State by the Legislature thereof...." Proceeding from article I, section 4, the court reasoned that because article III, section 16, does not expressly vest the Supreme Court with jurisdiction to hear Congressional district reapportionment claims, even the Supreme Court must therefore lack such jurisdiction. In short, the Circuit Judge concluded, separate provisions of the United States and Florida constitutions deny the state courts in Florida any judicial review in Congressional redistricting matters.[3] Accordingly, the court dismissed the case.
A few months after the court entered its final order of dismissal, the supreme court released its decision in Florida Senate v. Forman, 826 So.2d 279 (Fla.2002). There, the supreme court reviewed a judgment from a circuit court finding that the 2002 reapportionment of state legislative districts constituted an impermissible partisan gerrymander of the voters in Marion County.[4] In reaching its decision, the court began by noting that it had previously left open the possibility of bringing a political gerrymandering claim against the 2002 plan in a "court of competent jurisdiction." After considering the record on appeal and the arguments made, the court reversed the final judgment in Forman. The court concluded that the voters in Marion County do not constitute an identifiable political group for purposes of a partisan gerrymandering claim. Further, even if they constituted a political group, the court held that the record failed to support the finding that they had suffered any actual discriminatory impact.
It is clear that the supreme court decided Forman on the merits, not on jurisdictional grounds. Obviously if the circuit court were not a court of competent jurisdiction to decide the political gerrymandering claim in Forman, there would have been no basis to review the lower court's judgment on the merits. Forman thus implies that, contrary to the court's decision in the present case, the circuit courts do have the power to consider gerrymandering *686 challenges to the 2002 redistricting plan. Forman, however, did not involve a Congressional reapportionment claim. It is therefore necessary to explain how we reach the conclusion that the circuit court is a court of competent jurisdiction for Congressional redistricting claims.
We begin with the proposition that, as the Circuit Judge himself noted, the circuit courts in Florida are the primary trial courts of general jurisdiction. As our supreme court has explained,
"In this state, circuit courts are superior courts of general jurisdiction, and nothing is intended to be outside their jurisdiction except that which clearly and specially appears so to be.... `The circuit courts of the State of Florida are courts of general jurisdiction similar to the Court of King's Bench in England clothed with most generous powers under the Constitution, which are beyond the competency of the legislature to curtail. They are superior courts of general jurisdiction, subject of course to the appellate and supervisory powers vested in the Supreme Court by the Constitution, and as a general rule it might be said that nothing is outside the jurisdiction of a superior court of general jurisdiction except that which is clearly vested in other courts or tribunals, or is clearly out side of and beyond the jurisdiction vested in such circuit courts by the Constitution and the statutes enacted pursuant thereto.'" [c.o.]
English v. McCrary, 348 So.2d 293, 297 (Fla.1977) (quoting State ex rel. B.F. Goodrich Co. v. Trammell, 140 Fla. 500, 192 So. 175 (1939)). We find nothing in the Florida Constitution that expressly and clearly vests all apportionment claims in some court other than the circuit court.
To understand why the circuit court has not been ousted from jurisdiction over Congressional redistricting claims, it is important to differentiate among redistricting cases. There are two general classes of challenges to a redistricting plan. First, there is the facial challenge, in which a party seeks to show that, as written, the plan explicitly violates some constitutional principle.[5] Second, there is an as-applied challenge, in which a party seeks to establish that, based on facts existing outside the plan, and as applied to one or more districts, the plan violates the federal or state constitutions, or the Voting Rights Act of 1965(VRA).[6] VRA section 2(b) allows an aggrieved voter to show that:
"based on the totality of circumstances... the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice."[7]
A comparison of these two classes of claims as to redistricting plans shows that the "one-person, one-vote" claim challenging the entire plan as written alleges facial unconstitutionality, while an as-applied constitutional claim and a VRA section 2(b) claim turn on particular facts applicable to specific districts.
*687 In this case plaintiffs challenge the plan as applied to their districts and allege that it violates the Florida Constitution. We also note that their claims have many of the characteristics of a VRA section 2(b) claim. In fact their pleading expressly refers to VRA. The complaint alleges that, from the totality of the circumstances, the political processes leading to election in their districts are not equally open to members of their political party, who have less opportunity than the opposing party to elect members of their choice. Having ascertained that plaintiffs' claims involve an as-applied, or VRA, fact intensive challenge to the validity of parts of the 2002 redistricting, we turn back to specific Florida law relating to judicial review of reapportionment.
Earlier this year, the Florida Supreme Court addressed the nature of the review that it may give under article III, section 16, to redistricting plans adopted by the Florida Legislature. In re Constitutionality of House Joint Resolution 1987, 817 So.2d 819 (Fla.2002). In House Joint Resolution 1987, as the constitution requires, the Attorney General had petitioned the supreme court for a review of the 2002 redistricting of the state legislative districts. The Attorney General sought a declaratory judgment as to whether the 2002 redistricting plan satisfied the one-person, one-vote, principle, as well as state constitutional requirements. A number of interested persons were permitted to present their views as to the validity of the 2002 plan. Several of the interested parties attacked the plan as partisan gerrymandering and claimed that such district line-drawing rendered it invalid.
In House Joint Resolution 1987, the supreme court initially emphasized its limited powers of review under article III, section 16, and the primacy of the Legislature in the redistricting process. Referring to a similar review done by the court two decades earlier in a decennial redistricting case, the court again stressed that its article III, section 16, review would pass only "upon the facial validity of the plan and not upon any as-applied challenges." 817 So.2d at 824 (citing In re Apportionment Law Senate Joint Resolution 1305, 1972 Regular Session, 263 So.2d 797, 799-800 (Fla.1972)). The court said:
"The claims we could review included adherence to the one-person, one-vote constitutional requirement, and the state constitutional requirement that the districts contain contiguous, overlapping, or identical territory. We made clear that we are without authority to declare a legislative apportionment plan invalid unless it violated some prohibition in the constitution." [c.o.]
817 So.2d at 824. In keeping with earlier decisions, the Attorney General's petition for review sought a declaration by the supreme court only as to the facial validity of the 2002 plan.
Continuing with its analysis, the House Joint Resolution 1987 court noted that it had applied this limited form of review in the 1972 and 1982 redistricting cases. 817 So.2d at 824-25. The court candidly recognized that in the 1992 redistricting case, however, it had appeared to engage in a "quasi Voting Rights Act review." 817 So.2d at 825. The court now retreated, however, from the expansion in 1992 of its powers of review in redistricting cases and held that article III, section 16, does not authorize the supreme court to perform a fact-intensive review within the 30-day period prescribed by the state constitution. Applying its limited review holding, the court thereupon proceeded to conduct only a facial review of the 2002 state legislative districting plan, concluding that it satisfied the one-person, one-vote federal principle, *688 as well as the state constitutional requirement of contiguous, overlapping, or identical territory.
The House Joint Resolution 1987 court then referred to the remaining claims by other interested parties, including claims that the apportionment plan amounted to impermissible partisan gerrymandering. As to the partisan gerrymandering claim, the court held that under the Supreme Court holding in Davis v. Bandemer, 478 U.S. 109, 106 S.Ct. 2797, 92 L.Ed.2d 85 (1986), such claims are based on a violation of the Equal Protection Clause of the United States Constitution. Bandemer had held that a partisan gerrymandering claim requires proof of intentional discrimination against an identifiable political group, as well as an actual discriminatory effect on that group. 478 U.S. at 127, 106 S.Ct. 2797; 817 So.2d at 830. The requirement of a discriminatory effect involves a showing that the affected political group has "essentially been shut out of the political process." 478 U.S. at 139, 106 S.Ct. 2797; 817 So.2d at 830.
As to Bandemer's discriminatory impact requirement, the House Joint Resolution 1987 court went on to state:
"In order to mount a successful political gerrymandering claim against House Joint Resolution 1987, a plaintiff would have to establish a factual basis for the claim of actual discriminatory effect. Similar to our discussion of the Voting Rights Act above, this claim is `better suited for a court of competent jurisdiction where there is an opportunity to present evidence and witness testimony and where the court has the ability to make factual findings based on the evidence presented.' Further, the Legislature and other proponents of the redistricting plan must be afforded an opportunity to respond to any evidence of discriminatory effect. The present proceeding before this Court is not the proper forum to address such a fact-intensive claim." [c.o.]
817 So.2d at 831. In short, our supreme court held that the fact intensive nature of political gerrymandering claims requires that they be brought not in the supreme court under article III, section 16, but rather in a trial court "of competent jurisdiction."
The House Joint Resolution 1987 court did not specify that fact intensive claims should be brought in the federal district court, but instead referred to a "court of competent jurisdiction." This strongly implies that another court besides the federal district courts must also have the power to hear these cases. From English v. McCrary, it appears that the only other court is the Florida circuit court. Hence Florida law, as so recently applied by our state supreme court, does provide for circuit court jurisdiction over political gerrymandering claims in redistricting cases.
We next analyze whether federal law strips the state courts of jurisdiction to hear political gerrymandering claims in Congressional redistricting cases. In Growe v. Emison, 507 U.S. 25, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993), there were challenges to the Minnesota Congressional redistricting plan pending in both state and federal court. The Court held that the federal court should have delayed consideration of the challenge in deference to the Minnesota state court system, as well as to its legislature. The Court emphasized that the United States Constitution "leaves with the States primary responsibility for apportionment of their federal congressional [e.s.] and state legislative districts." 507 U.S. at 34, 113 S.Ct. 1075; see also U.S. Const., art. I, § 2. Growe echoed the earlier redistricting decision in Scott v. Germano, 381 U.S. 407, 85 S.Ct. *689 1525, 14 L.Ed.2d 477 (1965), where the Court had articulated a strong constitutional policy that:
"The power of the judiciary of a State to require valid reapportionment .... has not only been recognized by this Court but appropriate action by the States in such cases has been specifically encouraged." [e.s.]
381 U.S. at 409, 85 S.Ct. 1525. Plainly read, Growe and Germano find no bar in federal constitutional law to state court review of the validity of even Congressional redistricting plans. These decisions actually stand for a federal policy of deferring to state courts to hear and determine challenges to Congressional redistricting plans.
In addition to Growe and Germano, we are also obligated to follow the Court's holding in Howlett v. Rose, 496 U.S. 356, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990), even though it is not a redistricting case. In Howlett the Court held that a state court may not close its doors to claims of right finding their source in federal law at least not where state courts are open and operating, and suitable to the purpose of vindicating functionally identical claims of right arising under state law. Although the plaintiffs in this case have pleaded a claim of partisan gerrymandering under state law, their complaint also refers to the VRA. Moreover, as the Florida Supreme Court held in House Joint Resolution 1987, political gerrymandering claims are based on federal law from Bandemer.[8] In a political gerrymandering case, therefore, it is arguable whether the applicable standards have much to do with Florida law except as a conduit for the federal Bandemer standards. Thus federal law may ultimately supply the rule of decision for some or all of their claims. Under Howlett, the State of Florida may not close the doors of its courts to claims simply because they are based on, or find their source in, federal law.
From the foregoing, we discern these principles. The Florida Supreme Court's review under article III, section 16, is limited to claims of facial invalidity involving the one-person, one-vote principle as well as the specific districting requirements of the state constitution. All as-applied constitutional and VRA challengesthe kind alleged in this case must be brought in a court of competent jurisdiction. Under Florida law, the circuit courts are competent to hear these latter claims. At the same time, under federal law there is a strong policy of deference to the state courts for the resolution of even Congressional redistricting challenges. State courts may not close their doors to such claims even where the basis for the challenge is under federal law. We therefore conclude that the circuit court does have subject matter jurisdiction to hear the political gerrymandering claims raised by these plaintiffs as to the subject Congressional districts.
Finally, we reverse the order denying the motion of the President of the Florida Senate to intervene in the action. The only truly "indispensable" party to an action attacking the constitutionality of Florida legislationand this Joint Resolution is in the nature of legislationis the *690 Attorney General.[9] While we agree that the President of the Florida Senate is not an indispensable party to this gerrymandering claim, we nevertheless do hold that he is a proper party, one certainly with a cognizable interest in the action.[10] In doing so, we note that he was also a party in Forman.
REVERSED AND REMANDED FOR CONSISTENT PROCEEDINGS.
GUNTHER and SHAHOOD, JJ., concur.
NOTES
[1] The case has been twice removed to the federal district court and twice remanded by that court to the circuit court for an adjudication.
[2] See Fla. Const., art. III, § 16(c) ("Judicial review of apportionment.Within fifteen days after the passage of the joint resolution of apportionment, the attorney general shall petition the supreme court of the state for a declaratory judgment determining the validity of the apportionment. The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within thirty days from the filing of the petition, shall enter its judgment.").
[3] Even if the court somehow had jurisdiction, the Circuit Judge added, it lacks any power to impose a remedy for any violation of equal protection disclosed by the redistricting.
[4] Because it was decided after this appeal was filed, the circuit judge in this case obviously did not have the benefit of the supreme court decision in Forman.
[5] See, e.g., Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964) (constitutional provision that times, places and manner of holding elections should be prescribed by states and Congress does not immunize state congressional apportionment laws which debase citizen's right to vote from power of court to protect constitutional right of individual to equal protection of law from legislative destruction).
[6] 42 U.S.C. § 1971 et seq.
[7] 42 U.S.C. § 1973(2)(b) (1982).
[8] In House Joint Resolution 1987, our state supreme court analyzed the basis for political gerrymandering claims and concluded that they should be "measured by the standard set forth by the plurality of the Supreme Court in Bandemer." 817 So.2d at 830. The House Joint Resolution 1987 court noted that the equal protection standards of the Florida Constitution applied in voting rights cases "are not more stringent than the requirements under the United States Constitution." 817 So.2d at 824.
[9] See § 86.091, Fla. Stat. (2002) (in any action for a declaratory judgment that a statute is unconstitutional the Attorney General shall be served and is entitled to be heard). In this instance we use the term "indispensable party" to mean a party without whom the action cannot proceed. In these reapportionment cases, all the other individual parties are merely proper.
[10] As the court said in House Joint Resolution 1987, "the Legislature and other proponents of the redistricting plan must be afforded an opportunity to respond to any evidence of discriminatory effect." 817 So.2d at 831. The President of the Florida Senate is surely a proper party in light of the supreme court's statement.