DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

———————————————

CAIR FLORIDA, INC.,

Appellant,

v.

CHRISTOPHER NOCCO, Sheriff of Pasco County, in his
official capacity,

Appellee.

No. 2D2024-0788

———————————————

May 21, 2025

Appeal from the Circuit Court for Pasco County; Susan Gardner Barthle,
Judge.

Daniel Lucas Marshall of Southern Legal Counsel, Gainesville, and Amia
Trigg of NAACP Legal Defense & Educational Fund, Washington, DC, for
Appellant.

Matthew D. Stefany of Allen Norton & Blue, P.A., Tampa, for Appellee.

NORTHCUTT, Judge.

The Council on American-Islamic Relations, Florida (CAIR), appeals
a determination that it was not entitled to recover attorneys' fees
incurred in its public records litigation against the Pasco Sheriff's Office
(PSO). The circuit court concluded that the PSO had properly objected to

CAIR's records requests based on exemptions in the public records statutes. We reverse.

In 2011, the PSO implemented an "Intelligence Led Policing" (ILP) program. According to the office's ILP manual, the program's asserted goals included enhancing the efficient use of law enforcement resources by "focus[ing] law enforcement on problem people, problem places, and problem groups." To identify so-called problem people, the PSO "analyz[ed] information gathered from a multitude of resources." The PSO kept several lists of these problem people, subjecting them to heightened law enforcement attention, including "periodic . . . checks."

One such list was the Prolific Offender Pool, which included any "person of any age who meets or exceeds a threshold calculated by weighing his or her three year history of arrests and suspicions for criminal offenses in Pasco County." The PSO gave additional weight to other factors as well, including "repetitive appearance in criminal incident reports listed as a victim, witness, or other involved." After applying a mathematical calculation to the pool membership, the PSO designated "the top 100 active individuals by point value" as "prolific offenders in Pasco County" and placed them on what the parties refer to as the Prolific Offender List.

The PSO also targeted "at-risk youths" for extra attention. These were young people that it surmised were "destined" to become "serious, violent, and chronic offenders." According to the ILP manual, "[i]dentifying at-risk youth who are destined to a life of crime and engaging them to prevent them from developing into prolific offenders . . . has significant crime prevention potential." To that end, the PSO "partnered with the Pasco County School Board and Department of Children and Families" to collect information for purposes of compiling

2

an At-Risk Youth list.  The PSO assessed a youth's qualification for the at-risk designation based on a complex array of factors set forth in its ILP manual, which we have condensed as follows:

| EDUCATIONAL RISK FACTORS | |
|---|---|
| **Course Performance** | Letter grades |
| **GPA** | |
| **Credits** | Number of credits earned |
| **Attendance** | Number of absences |
| **Office Discipline Referrals** | Number of referrals |
| **CRIMINOGENIC RISK FACTORS** | |
| **Age of Onset** | The age at which the youth was first arrested |
| **Crime Type** | |
| **Number of Convictions** | |
| **Drug or Alcohol** | |
| **Lack of Parental Supervision** | Number of incidences of "truancy & curfew warnings, juvenile disturbances, and [violations of probation]" |
| **Victim of Personal Crime** | Number of times being a victim |
| **Delinquent friends** | Number of delinquent friends |
| **History of running away** | Number of incidences of running away |
| **Custody disputes** | |
| **Certified Gang Member** | |
| **ADVERSE CHILDHOOD EXPERIENCES** | |
| **Household member incarceration** | |
| **Physical abuse** | |
| **Emotional abuse** | |
| **Witness household violence** | |
| **Physical neglect** | |
| **Household substance abuse** | |
| **Sexual Abuse** | |

As is evident from the criteria for all three lists—the Prolific Offender Pool, the Prolific Offender List, and the At-Risk Youth List—no prior conviction was necessary for the PSO to target someone for heightened law enforcement attention.

In 2020, the Tampa Bay Times published two investigative articles about the PSO's use of intelligence-led policing.  *See* Neil Bedi & Kathleen McGrory, *Targeted: Pasco's sheriff created a futuristic program to stop*

*crime before it happens. It monitors and harasses families across the county*, Tampa Bay Times (Sept. 3, 2020), https://projects.tampabay.com/projects/2020/investigations/police-pasco-sheriff-targeted/intelligence-led-policing/; Neil Bedi & Kathleen McGrory, *Pasco's sheriff uses grades and abuse histories to label schoolchildren potential criminals. The kids and their parents don't know*, Tampa Bay Times (Nov. 19, 2020), https://projects.tampabay.com/projects/2020/investigations/police-pasco-sheriff-targeted/school-data/.

The publicity of the ILP program brought with it additional public scrutiny. CAIR submitted a public records request to the PSO under section 119.07, Florida Statutes (2021), seeking several categories of information about the program. After several amendments, the request ultimately sought PSO's production of sixty-three discrete categories of documentation. CAIR and the PSO resolved most of the requests without issues. However, the PSO objected to three categories, set forth in request numbers 13, 18, and 60. Requests 13 and 18 sought documentation used in developing the Prolific Offender List and the Prolific Offender Pool, respectively. Request 60 was for documentation used in developing the At-Risk Youth list.

The parties engaged in multiple exchanges in which the PSO repeatedly rejected CAIR's attempts to obtain the information in requests 13, 18, and 60. Ultimately, in September 2022, CAIR filed a petition for writ of mandamus to compel the production. The parties actively litigated the issues on the merits until the spring of 2023, when the PSO announced that it had discontinued the ILP program and would produce the documents at issue in CAIR's mandamus petition. CAIR moved to recover its attorneys' fees under section 119.12(1) on the ground that the

4

PSO had unlawfully withheld the subject public records for two years, causing CAIR to incur substantial costs litigating the issue. The circuit court denied the motion, concluding that "[t]here was no unlawful refusal to produce responsive documents."

This was error. Although some of the PSO's concerns may have required it to redact portions of the requested documentation before disclosing it, there was no lawful basis for the PSO's wholesale refusal to provide the information CAIR requested in the three disputed categories. Thus, it unlawfully withheld information subject to disclosure under the public records law, and consequently, CAIR is entitled to recover its attorneys' fees.

Under section 119.07(1)(a) of the public records law, "[e]very person who has custody of a public record shall permit the record to be inspected and copied by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public records." If some of the information in a requested record is exempt from public disclosure, its custodian must redact the exempt information and disclose the remainder. § 119.07(1)(d). The burden to show that an exemption applies is on the custodian. *Barfield v. Sch. Bd. of Manatee Cnty.*, 135 So. 3d 560, 562 (Fla. 2d DCA 2014); *Rameses, Inc. v. Demings*, 29 So. 3d 418, 421 (Fla. 5th DCA 2010) (citing *Weeks v. Golden*, 764 So. 2d 633, 635 (Fla. 1st DCA 2000)).

With those principles in mind, we turn first to the PSO's objections to CAIR's requests 13 and 18 for documentation regarding the Prolific Offender Pool and the Prolific Offender List. As to both lists, CAIR asked the PSO to provide "deidentified and disaggregated data" including (a) race, (b) ethnicity, (c) national origin, (d) age, (e) gender, (f) disability type,

5

(g) zip code of last-known residence, and (h) prolific offender calculation scoring broken down by criminal history and enhancements. For the Prolific Offender Pool, CAIR additionally sought (i) case numbers, (j) felony or misdemeanor levels, and (k) school name.

The PSO refused to provide any information in response to these requests, redacted or otherwise. It first claimed that all the subject information was exempt from disclosure under section 119.071(2)(c)1. That statute provides exemptions from disclosure requirements for "active criminal intelligence information" and "active criminal investigative information," as defined in section 119.011.

Those exemptions did not apply here. The information that the PSO compiled and that CAIR requested clearly does not meet the definition of "active criminal investigative information," which applies only to information collected "*in the course of conducting* a criminal investigation of a *specific act.*" § 119.011(3)(b) (emphases added). The ILP program was not itself a criminal investigation. And its purpose was to predict potential future offenders based on a variety of factors, not to investigate a specific act.

Neither did CAIR's records request seek "active criminal intelligence information." As defined in the statute, that exemption applies only to "information with respect to an *identifiable* person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity." § 119.011(3)(a) (emphasis added). CAIR requested "deidentified and disaggregated data." On its face, this request did not implicate the exemption for "active criminal intelligence information."

But the PSO maintains that the people on the lists were an identifiable group simply by virtue of being on the lists, asserting that

6

"[t]he Prolific Offender Pool and List are, by definition, an identifiable group—*i.e.* a group of individuals meeting the criteria for inclusion as a 'prolific offender.' " We cannot subscribe to the PSO's reasoning because it is circular and therefore fallacious and unworkable.

We interpret the statute by the method set forth in *Conage v. United States*, 346 So. 3d 594, 598 (Fla. 2022), applying traditional canons of statutory interpretation to extract the meaning of the disputed text. The term "identifiable" as used in section 119.011(3)(a) is facially ambiguous because CAIR and the PSO have proposed two arguably reasonable interpretations, resulting in two feasible outcomes. *See Hess v. Walton*, 898 So. 2d 1046, 1049 (Fla. 2d DCA 2005) ("A statute is normally regarded as 'ambiguous' when its language may permit two or more outcomes."). We found nothing else in the statute's text to assist our analysis. Various legal and standard dictionaries also provide no assistance.

Case law interpreting or applying the term *identifiable* does guide our analysis, however. In *Florida Senate v. Forman*, 826 So. 2d 279, 280-81 (Fla. 2002), the issue was whether the voters of Marion County, in toto, could be an *identifiable political group* that could claim discrimination to support a charge of gerrymandering. The circuit court allowed the claim to go forward, but the supreme court reversed. *Id.* at 280. It held that allowing the term *identifiable political group* to encompass the entire electorate of a county was too broad. *Id.* at 282. "If we were to allow such a finding, then we would be opening up the floodgates to allow voters and residents of every city, county, or any other political subdivision to raise equal protection claims in the future—a precedent that is neither practical nor logical." *Id.*

7

The PSO's argument here is analogous to that of the petitioners in *Forman.* The PSO claims, in effect, that any person or group that can be defined or characterized in some way or another is identifiable for purposes of the public records exemption. Thus, the PSO could have included all residents of Pasco County in its Public Offender Pool and then claimed that information about the Pool was exempt from disclosure because it was a group that was identifiable as residents of Pasco County. As in *Forman,* such a circular construction would be impractical and illogical. We have found no Florida authority that applies the term *identifiable* in the way that the PSO advocates.[1]

The PSO also claimed that the information on these two lists was exempt from disclosure under section 119.071(2)(d), which applies to "information revealing surveillance techniques or procedures or personnel," and "[a]ny comprehensive inventory of state and local law enforcement resources compiled pursuant to part I, chapter 23, and any comprehensive policies or plans compiled by a criminal justice agency pertaining to the mobilization, deployment, or tactical operations involved in responding to an emergency." But CAIR did not seek—and the lists as described in our record do not contain—any "surveillance

---

[1] Cases we have found that have used *identifiable* in other contexts typically apply it narrowly. For example, in *Ferguson Transportation, Inc. v. North American Van Lines, Inc.*, 687 So. 2d 821, 821 (Fla. 1996), the court held that "to establish the tort of tortious interference with a business relationship, the plaintiff must prove a business relationship with identifiable customers." There, it used *identifiable* to denote a *particular* understanding or agreement. And in *Williams Management Enterprises, Inc. v. Buonauro*, 489 So. 2d 160, 164 (Fla. 5th DCA 1986), the court considered specific bills and coins to be usefully identifiable for the purpose of replevin when they had "serial numbers or special markings, or because they are located uncommingled at a specific exclusive place or contained within a[n] identifiable container."

techniques or procedures or personnel," nor were the lists a "comprehensive inventory" or a "comprehensive polic[y] or plan[]."

Finally, the PSO argued that CAIR's initial requests asked PSO to furnish the information in a format that would have improperly required it to create new documents—an obligation that is not imposed by the public records law. However, as the PSO admitted below and on appeal, CAIR quickly waived that aspect of its request, and it informed the PSO that it would accept the redacted documents in whatever form they were found in the PSO's records.

In sum, the Prolific Offender Pool and Prolific Offender List records that CAIR requested were public records, and the PSO failed to demonstrate that any statutory exemption excused its obligation to furnish them.

We turn next to request 60, which sought information about the At-Risk Youth list as follows:

> 60:    For the At-Risk Target List(s) or "At-Risk Youth List(s)", deidentified and disaggregated data as follows:
>
> A.    Rows:[2] Each row should reflect each of the deidentified individuals on the At Risk Target List(s) or "At-Risk Youth List(s)".
>
> B.    Columns (for each person listed in the rows above):
>
> > i.    Case numbers.
> >
> > ii.    Felony or misdemeanor levels.
> >
> > iii.    Race.
> >
> > iv.    Ethnicity.
> >
> > v.    National origin.

---

[2] The PSO concedes that, as with the other lists, CAIR later withdrew its request that PSO furnish the information about the At-Risk Youth list in any specific format.

9

vi.    Age or D.O.B.

vii.    Gender.

viii.    Disability type.

ix.    Zip code of their last-known residence.

x.    Scoring broken down by criminal history and enhancements.

xi.    School name

xii.    Educational risk factors score, broken down by age of onset, crime type, number of convictions, drug or alcohol, lack of parental supervision (Truancy, curfew, 22J), victim of personal crime, delinquent friends, history of running away, custody disputes, certified gang member, and overall scoring

xiii.    Adverse childhood experiences, broken down by household member incarceration, physical abuse, emotional abuse, witness household violence, physical neglect, household substance abuse, sexual abuse, and overall scoring

The PSO raised a plethora of objections, claiming these records included information that was confidential under provisions preventing disclosure of educational and "pertinent school records," "security and fire safety system plan[s]," "threat assessments," educational facility records, juvenile delinquency information, and juvenile habitual offender information. The PSO also claimed that its records contained information about crime victims that is exempt from disclosure under Marsy's Law, article 1, section 16(5), of the Florida Constitution.

We need not delve into each of these objections in detail, because none of them permitted PSO's outright rejection of the public records request. Section 119.07(1)(d) states:

> A person who has custody of a public record who asserts that an exemption applies to a part of such record shall redact that portion of the record to which an exemption has been

10

asserted and validly applies, and such person shall produce the remainder of such record for inspection and copying.

It is certainly possible that portions of the records CAIR requested fell within confidentiality protections.[3] But the PSO refused to provide *any* of the requested records, redacted or otherwise. Therefore, vis-à-vis CAIR's attorneys' fee entitlement, the PSO's burden was to demonstrate that *all* the requested information was exempt from disclosure based on confidentiality. *See Barfield,* 135 So. 3d at 562 ("The governmental agency claiming the benefit of an exemption bears the burden of proving its entitlement to the exemption."). It did not do so, and it could not.

Having concluded that the PSO had no legal basis for refusing to disclose all the information that it withheld regarding the Prolific Offender Pool, the Prolific Offender List, and the At-Risk-Youth list, the ultimate question is whether that refusal entitled CAIR to an award of fees. Section 119.12(1) states, in pertinent part:

> (1) If a civil action is filed against an agency to enforce the provisions of this chapter, the court shall assess and award the reasonable costs of enforcement, including reasonable attorney fees, against the responsible agency if the court determines that:
>
> (a) The agency unlawfully refused to permit a public record to be inspected or copied . . . .

The statute does not require a finding that the offending agency acted unreasonably or in bad faith. *Bd. of Trs., Jacksonville Police & Fire Pension Fund v. Lee,* 189 So. 3d 120, 127 (Fla. 2016). All that is necessary is a determination that "the public agency violated a provision of the Public Records Act in failing to permit a public record to be

---

[3] Notably, however, the PSO apparently felt no obligation to maintain the confidentiality of the information when it voluntarily complied with CAIR's records request after terminating the ILP program.

11

inspected or copied." *Id.* at 128. As we have seen, that occurred in this case.

For the foregoing reasons, the circuit court should have concluded that the PSO's refusal to permit the inspection or copying of the mentioned public records was unlawful and that CAIR was entitled to recover the attorneys' fees and other costs it incurred enforcing the PSO's obligations under the public records law. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

SILBERMAN and LaROSE, JJ., Concur.

_____

Opinion subject to revision prior publication.