PARIENTE, J.
The Florida Legislature has filed a petition for writ of prohibition or in the alternative to invoke this Court’s constitutional authority to issue all writs necessary to the complete exercise of its jurisdiction, seeking to prevent a circuit court from hearing a lawsuit that challenges the validity of the 2012 plan apportioning districts for the Florida Senate.[1] We have jurisdiction to consider the extraordinary writs, and both sides in this case agree that this Court, rather than the First District Court of Appeal, should review the petition. See art. V, § 3(b)(7), Fla. Const.
The crux of the issue presented by the Legislature’s petition for extraordinary writ relief is whether , this Court has exclusive jurisdiction over redistricting challenges that assert violations of article III, *200 section 21, of the Florida Constitution, and whether that jurisdiction is limited to the decisions rendered by this Court during the initial thirty-day period of review mandated by article III, section 16, of the Florida Constitution. Last year, we reviewed the 2012 legislative apportionment plan under our article III, section 16, jurisdiction, ultimately upholding its validity after initially invalidating the Senate map. See In re Senate Joint Resolution of Legislative Apportionment 2-B (“Apportionment II”), 89 So.3d 872 (Fla.2012); In re Senate Joint Resolution of Legislative Apportionment 1176 (“Apportionment I ”), 83 So.3d 597 (Fla.2012).
The Legislature’s view is that once the apportionment plan is validated through this Court’s article III, section 16, review, no further challenges can be brought— either in this Court or in the circuit court — alleging violations of the constitutional redistricting standards enumerated in article III, section 21. Specifically, the Legislature contends that this Court’s 2012 review of the legislative apportionment plan in Apportionment I and Apportionment II foreclosed all future challenges to the constitutionality of the plan under the Florida Constitution, thereby barring the circuit court complaint in this case.
For the reasons more fully explained below, we reject the Legislature’s argument and deny the extraordinary writ petition because this Court has never interpreted its article III, section 16, review as granting this Court exclusive jurisdiction over all claims relating to legislative apportionment and limiting its jurisdiction to consider those claims to an initial thirty-day review period. Instead, under its interpretation of article III, section 16, this Court has always conducted a facial review of the validity of the legislative apportionment plan and has consistently contemplated the possibility of subsequent fact-based challenges to the plan. Further, specifically with respect to the declaratory judgment language in article III, section 16(d), this Court has always rendered a declaratory judgment that is binding only as to the facial validity of the plan, which could never preclude subsequent fact-based challenges.
While the 2010 introduction of express new standards into the Florida Constitution to govern the redistricting process changed the extent of this Court’s article III, section 16, review — in that the Court is now constitutionally required to conduct a more in-depth review of an apportionment plan to effectuate the intent of the voters who enacted the article III, section 21, standards in 2010 — the new standards did not change the fundamental nature of this Court’s initial thirty-day review. In 2012, our review under article III, section 16, remained the same as it has always been — a facial review based on objective, undisputed evidence in the limited record before the Court.
Accordingly, although this Court endeavored to fulfill its constitutional obligation in Apportionment I and Apportionment II to conduct a meaningful review of the 2012 legislative apportionment plan and to provide guidance regarding the proper interpretation of the new constitutional standards, our precedent remains clear that subsequent challenges based on factual evidence not considered or available in this Court’s initial thirty-day review may be brought and argued in a court of competent jurisdiction. In other words, our recognition and awareness of the importance of providing stability to the plan given an imminent election in 2012-includ-ing, as the Florida Constitution explicitly contemplates, allowing the Legislature to correct obvious deficiencies in the Senate map apparent on the face of the record in Apportionment I — did not alter our estab *201 lished precedent. Consistent with our pri- or cases, our facial review left open the possibility of future fact-intensive claims and did not preclude the future discovery or development of evidence, which could never have been a part of this Court’s limited record under our article III, section 16, review, that would demonstrate a violation of the standards the Florida voters enacted in 2010. We therefore hold that the circuit court has subject matter jurisdiction to adjudicate fact-based challenges to the validity of the 2012 legislative apportionment plan, that the circuit court’s exercise of jurisdiction in this case will not interfere with the binding judgment of this Court, and that the Legislature thus has not met its burden of demonstrating entitlement to relief.
FACTS AND BACKGROUND
In 2010, the Florida voters approved an amendment to the Florida Constitution providing for express new state constitutional standards to govern the once-in-a-decade apportionment of legislative districts. These standards, now enumerated in article III, section 21, of the Florida Constitution, are set forth in two tiers, with each tier containing three requirements. The first tier provides: (1) that no apportionment plan or district shall be drawn with the intent to favor or disfavor a political party or an incumbent; (2) that districts shall not be drawn with the intent or result of denying or abridging the equal opportunity of racial or language minorities to participate in the political process or to diminish their ability to elect representatives of their choice; and (3) that districts shall consist of contiguous territory. Art. Ill, § 21(a), Fla. Const. The second tier lists three additional requirements, which are subordinate to the requirements in the first tier and to federal law in the event of a conflict: (1) districts shall be as nearly equal in population as is practicable; (2) districts shall be compact; and (3) districts shall, where feasible, utilize existing political and geographical boundaries. Art. Ill, § 21(b), Fla. Const.
With these new, expanded state constitutional standards in place, the Legislature during its 2012 session engaged in its onee-in-a-decade process of creating new district boundaries for the state’s 120 House of Representatives and 40 Senate districts. This legislative reapportionment process culminated on February 9, 2012, in the approval of a joint resolution of legislative apportionment. The next day, as required by article III, section 16(c), of the Florida Constitution, the Attorney General petitioned this Court for a declaratory judgment to determine the validity of the Legislature’s apportionment plan as enacted.
In Apportionment I, 83 So.3d at 600, this Court declared the plan apportioning districts for the Florida House of Representatives to be “facially valid,” but determined that the plan apportioning districts for the Florida Senate was “facially invalid under article III, section 21.” In particular, the Court declared the Senate map’s numbering scheme invalid “because it was intended to benefit incumbents by making them eligible to serve for longer periods of time than they would have otherwise been eligible to serve” and declared eight individual Senate districts “to be in violation of constitutional requirements.” Id. at 683.
Thereafter, sitting in a special session as contemplated by article III, section 16(d), of the Florida Constitution, the Legislature adopted a revised plan on March 27, 2012, eighteen days after this Court declared the original plan apportioning districts for the Senate to be facially invalid. After the Attorney General again petitioned this Court to render its constitutionally mandated declaratory judgment determining the validity of the revised ap *202 portionment plan, this Court upheld the facial validity of the revised plan. See Apportionment II, 89 So.3d at 877. A plurality opinion of this Court declared the redrawn Senate map “constitutionally valid under the Florida Constitution.” Id. The plurality concluded that the challengers had “failed to satisfy their burden of demonstrating any constitutional violation in this facial review.” Id. at 881.
On September 5, 2012, the League of Women Voters of Florida, Common Cause, seven individually named plaintiffs (collectively “the Coalition”), and the National Council of La Raza[2] filed a complaint in circuit court, alleging that the revised Senate map continues to favor incumbents and reflects “partisan gamesmanship,” thereby violating the express standards contained in article III, section 21. Subsequently, the Legislature moved to dismiss the complaint with prejudice, contending that the circuit court lacks subject matter jurisdiction to adjudicate a challenge to the 2012 legislative apportionment plan and that the claims were identical to those previously rejected during this Court’s article III, section 16, review.
In an order dated January 17, 2013, the circuit court denied the Legislature’s motion to dismiss. Citing to this Court’s decision in the 2002 reapportionment case, In re Constitutionality of House Joint Resolution 1987 (“In re Apportionment Law-2002 ”), 817 So.2d 819, 828 (Fla.2002), the circuit court stated that this Court “has never held that it has exclusive jurisdiction over challenges to legislative redistricting plans.” Instead, the circuit court explained, this . Court “has repeatedly stated that it was limited to a ‘facial’ review and that consideration of more fact-intensive ‘as-applied’ claims” would be more appropriate in a court of competent jurisdiction that provides an opportunity for the presentation of evidence and witness testimony and allows for factual findings based on the evidence presented. The circuit court emphasized that this Court “had many opportunities” during the 2012 redistricting litigation “to declare that its jurisdiction on the subject was exclusive.” Because this Court did not make any statements indicating such exclusive jurisdiction, the circuit court stated that it would “not presume by [the Court’s] silence that the [C]ourt meant to overturn its previous pronouncements that as-applied claims are properly brought in circuit court.”
Further, the circuit court reasoned that it could not “determinfe] from the pleadings themselves” in this case whether the claims raised by the Coalition are identical to the facial claims considered by this Court in AppoHionment I and AppoHionment II, as the Legislature contends, or whether these new claims are in actuality as-applied challenges, as the Coalition argues. The circuit court stressed that it does not intend “to enter any judgment in this case that is contradictory to, or inconsistent with, the opinions of the Florida Supreme Court in AppoHionment I or Ap-poHionment II.” The circuit court then concluded as follows:
To the extent that the plaintiffs [ (the Coalition) ] seek only a rehash of facial arguments made before the Florida Supreme Court, they will be disappointed. But to the extent their claims are as-applied challenges to the plans, they are entitled to develop and to present relevant evidence to support their claims. *203 The [Legislature] likewise [is] entitled to prepare and present contrary evidence in defense.
Accordingly, the circuit court denied the Legislature’s motion to dismiss. The Legislature now seeks extraordinary relief from the circuit court’s order in the form of a writ of prohibition or a constitutional writ pursuant to this Court’s all writs authority directing the circuit court to dismiss the Coalition’s complaint.
ANALYSIS
The Florida Constitution authorizes this Court to “issue writs of prohibition to courts and all writs necessary to the complete exercise of its jurisdiction.” Art. V, § 3(b)(7), Fla. Const. This Court has set forth the prohibition standard as follows:
Prohibition may only be granted when it is shown that a lower court is without jurisdiction or attempting to act in excess of jurisdiction. It is preventive and not corrective in that it commands the one to whom it is directed not to do the thing which the supervisory court is informed the lower tribunal is about to do. Its purpose is to prevent the doing of something, not to compel the undoing of something already done.
Roberts v. Brown, 43 So.3d 673, 677-78 (Fla.2010) (quoting English v. McCrary, 348 So.2d 293, 296-97 (Fla.1977)).
With respect to all writs relief, this Court has explained that the constitutional all writs provision “does not constitute a separate source of original or appellate jurisdiction. Rather, it operates as an aid to the Court in exercising its ‘ultimate jurisdiction,’ conferred elsewhere in the constitution.” Williams v. State, 913 So.2d 541, 543 (Fla.2005); see also St. Paul Title Ins. Co. v. Davis, 392 So.2d 1304, 1305 (Fla.1980) (“The all writs provision of section 3(b)(7) does not confer added appellate jurisdiction on this Court, and this Court’s all writs power cannot be used as an independent basis of jurisdiction_”).
The Legislature raises three distinct claims in support of its petition for extraordinary relief. First, the Legislature asks this Court to issue a writ of prohibition, contending that the circuit court lacks subject matter jurisdiction over the Coalition’s complaint because this Court has exclusive jurisdiction under article III, section 16, to determine the validity of a legislative apportionment plan under state constitutional standards. Second, the Legislature argues that even if the circuit court has subject matter jurisdiction to hear the Coalition’s challenges, this Court should exercise its all writs authority because this Court has already entered a declaratory judgment “binding upon all the citizens of the state,” art. Ill, § 16(d), Fla. Const., determining the apportionment plan to be valid, which precludes the Coalition’s subsequent challenges. Third, the Legislature contends that this Court should exercise its all writs jurisdiction because the Coalition’s challenges to the Senate map are identical to the challenges this Court has already rejected, and therefore it is impossible for the Coalition to prevail in this litigation without the circuit court overturning this Court’s factual and legal determinations in Apportionment II. We address each of the Legislature’s arguments in turn.
I. The Prohibition Claim: Whether This Court Has Exclusive and Limited Subject Matter Jurisdiction Under Article III, Section 16
The Legislature’s first argument is that this Court should issue a writ of prohibition because this Court has exclusive jurisdiction over legislative reapportionment under article III, section 16, of the Florida Constitution. The Legislature’s primary argument on this point is, in effect, that this Court’s exclusive jurisdiction *204 is limited. In other words, the Legislature does not contend as its primary argument that the Coalition’s underlying complaint should be transferred to this Court for consideration, but rather that the claims contained in the Coalition’s complaint attacking the validity of the Senate map based on the article III, section 21, standards are completely precluded. We reject the Legislature’s prohibition argument for several reasons.
First, this Court’s precedent clearly demonstrates that the Court has never considered its jurisdiction over challenges to a legislative apportionment plan to be exclusive and limited to the constitutionally mandated thirty-day review. Instead, this Court has consistently conducted only a facial review of the plan’s validity during our thirty-day automatic review pursuant to article III, section 16. See, e.g., In re Apportionment Law—2002, 817 So.2d at 824-25 (explaining that the Court passes only “upon the facial validity of the plan and not upon any as-applied challenges”); In re Senate Joint Resolution 2G, Special Apportionment Session 1992 (“In re Apportionment Law—1992”), 597 So.2d 276, 282, 285 (Fla.1992) (considering challenges under the Voting Rights Act (VRA) to the extent the Court was able to do so based on “statistical data filed” in the case, “none of which was disputed,” and concluding that “[gjiven the limitations of our review, including both time constraints and the unavailability of specific factual findings, we conclude that the Joint Resolution does not discriminate against minorities,” but allowing subsequent VRA challenges to be brought); In re Apportionment Law Appearing as Senate Joint Resolution 1E, 1982 Special Apportionment Session (“In re Apportionment Law—1982”), 414 So.2d 1040, 1052 (Fla.1982) (stating that “[i]n this apportionment process, the sole question to be considered by this Court in this proceeding is the facial constitutional validity” of the joint resolution, and declaring that the apportionment plan “is valid on its face”); In re Apportionment Law Appearing as Senate Joint Resolution No. 1305, 1972 Regular Session (“In re Apportionment Law—1972”), 263 So.2d 797, 808 (Fla.1972) (“The Florida Constitution contemplates that our judgment in these proceedings be limited to a declaration that the apportionment plan on its face is either valid or invalid.... ”).
This is true of our most recent decisions in the 2012 apportionment cases as well, which are replete with statements characterizing the nature of our review as a facial one. See, e.g., Apportionment I, 83 So.3d at 600 (concluding “that the Senate plan is facially invalid under article III, section 21, and further conclud[ing] that the House plan is facially valid” (emphasis added)); id. at 604 (“[I]n light of challenges raised by the opponents of the plans, we examine whether the Legislature’s apportionment plans are facially consistent with these requirements.” (emphasis added)); id. at 610 (“[T]he challenges in 2012 are based specifically on allegations that the plans facially violate the requirements of the new provisions of our state constitution.” (emphasis added)); see also Apportionment II, 89 So.3d at 881 (“Finally, we conclude that the opponents have failed to satisfy their burden of demonstrating any constitutional violation in this facial review.” (emphasis added)).
Second, in our apportionment decisions in 1972, 1982, and 1992, this Court specifically retained exclusive jurisdiction to consider subsequent challenges the Court could not have adjudicated during the limited thirty-day review period mandated by article III, section 16. See In re Apportionment Law-1992, 597 So.2d at 285-86; In re Apportionment Law—1982, 414 So.2d at 1052; In re Apportionment Law—1972, 263 So.2d at 822. In 2002, *205 this Court instead provided that subsequent challenges could be brought in a court of competent jurisdiction. See In re Apportionment Law—2002, 817 So.2d at 832. If this Court’s jurisdiction was limited to the automatic thirty-day review, as the Legislature contends, then the Court could not have retained jurisdiction to hear subsequent challenges in 1972, 1982, and 1992, nor could we have deferred resolution of factual issues in 2002 to a court of competent jurisdiction. Indeed, in Florida Senate v. Forman, 826 So.2d 279, 282 (Fla.2002), this Court addressed the merits of a subsequent challenge to the 2002 legislative apportionment plan, which was filed in circuit court, and plainly did not decide the case on jurisdictional grounds. See Brown v. Butterworth, 831 So.2d 683, 685 (Fla. 4th DCA 2002) (“It is clear that the supreme court decided Forman on the merits, not on jurisdictional grounds. Obviously if the circuit court were not a court of competent jurisdiction to decide the political gerrymandering claim in Forman, there would have been no basis to review the lower court’s judgment on the merits.”).
Third, the Legislature’s position that all challenges to the validity of the 2012 legislative apportionment plan could have been brought only during the constitutionally mandated review this Court conducted under article III, section 16, would directly contravene the intent of the framers and voters in passing the 2010 constitutional amendment establishing “stringent new standards for the once-in-a-decade apportionment of legislative districts.” Apportionment I, 83 So.3d at 597. Under the Legislature’s view of this Court’s jurisdiction as exclusive and limited, any evidence discovered outside of the limited record available to the Court during the thirty-day review period mandated by article III, section 16, could never be evaluated or tested through an adversarial process.
For example, if evidence were discovered that would demonstrate a constitutional violation in the form of direct evidence of improper partisan or discriminatory intent that could not have been reviewed during this Court’s article III, section 16, facial review, according to the Legislature’s position there would be no possible remedy for the constitutional violation. This interpretation would directly contravene the purpose of the 2010 amendment and undermine the will of the voters in placing more stringent standards on the Legislature through the adoption of article III, section 21, of the Florida Constitution. Simply put, the framers and voters clearly desired more judicial scrutiny of the legislative apportionment plan, not less. Further, when the 2010 amendment was proposed and passed, the framers and voters were entitled to rely on this Court’s precedent from 1972 through 2002, which contemplated the possibility of future, fact-based challenges. See, e.g., Fla. Dep’t of Revenue v. City of Gainesville, 918 So.2d 250, 264 (Fla.2005) (explaining the principle of statutory and constitutional construction that prior judicial interpretations are presumed to be known and adopted unless a contrary intention is expressed).
Fourth, although the Legislature points to the historical context that resulted in the adoption of article III, section 16, as support for its position, the Legislature’s approach would actually undermine the purpose behind this constitutional provision. Specifically, the Legislature argues that article III, section 16, was created to prevent extended litigation over the validity of the legislative apportionment plan. However, a closer examination of the history surrounding the adoption of article III, section 16, reveals that the primary purpose behind the creation of this Court’s initial thirty-day review of the *206 plan’s validity was in actuality to remove redistricting litigation from the purview of the federal courts. As Justice Lewis explained in a 2002 concurring opinion joined by three other justices, “a primary impetus for the enactment of that which became article III, section 16 of the Florida Constitution was the desire to remove the bulk of redistricting litigation from the federal courts and place it directly in the state court system.” In re Apportionment Law—2002, 817 So.2d at 834 (Fla.2002) (Lewis, J., concurring, joined by three other justices).
Under the Legislature’s view, state court jurisdiction over the legislative apportionment plan would be limited to only those claims this Court could review in thirty days, which both by time and process are confined to the legislative record. See Apportionment II, 89 So.3d at 893 (Pariente, J., concurring) (“Working within a strict time period, this Court is realistically not able to remand for fact-finding, which creates concerns that are compounded by the fact that the Court is constrained to the legislative record that is provided to it.”). Any fact-intensive challenges as to discriminatory, intent against a racial or language minority — discrimination now explicitly prohibited by the Florida Constitution under article III, section 21(a) — would then have to be brought in federal court, provided the claim meets the requirements of the Federal Voting Rights Act. Indeed, the resulting federal litigation would be the very situation article III, section 16, was created to avoid.
Fifth, the Legislature’s attempt to distinguish this Court’s apportionment decision in 2002, which specifically contemplated the possibility of subsequent challenges to the legislative apportionment plan in a court of competent jurisdiction, see In re Apportionment Law—2002, 817 So.2d at 832, is unavailing. The Legislature contends that because the Court resolved all relevant state constitutional issues in 2002 and therefore contemplated future challenges based only on the federal constitution, the 2002 apportionment decision cannot support the Coalition’s claim that it is entitled to file subsequent challenges to the 2012 plan based on the state constitution. However, none of the state constitutional issues the Court addressed in 2002 required findings of fact. By contrast, with the adoption of the article III, section 21, standards in 2010, “intent,” which is an inquiry that can often involve disputed issues of fact, is now a key element in the analysis of the Legislature’s compliance with the Florida Constitution’s redistricting standards. While this Court endeavored to address the issue of intent in Apportionment I and Apportionment II within the inherent constraints of our review, it is clear that, unlike in 2002, subsequent fact-based challenges with respect to the new state constitutional standards could possibly be argued based on factual evidence not considered or available in the limited record before this Court during our article III, section 16, review.
Sixth, the Legislature’s reliance on Roberts, 43 So.3d 673, to support its argument that this Court’s jurisdiction over legislative reapportionment is exclusive, is misplaced. Roberts was not a redistricting case, but rather concerned this Court’s advisory opinion jurisdiction to evaluate constitutional amendments proposed by citizen initiative. We reasoned in Roberts that “a pre-election challenge to a citizen initiative proposed constitutional amendment is always in the nature and form of requesting an advisory opinion, which is specifically contemplated and addressed in the Florida Constitution to be exclusively within the authority of this Court.” Id. at 680. We specifically explained that a circuit court is without jurisdiction to render such an advisory opinion. See id. at 683 *207 (“Circuit courts are not authorized to issue advisory opinions.”). This is a critical distinction because in the apportionment context, this Court’s judgment is not an advisory opinion, and circuit courts are not without jurisdiction to address fact-based challenges to the constitutionality of statutes.
In addition, as the Court pointed out in Roberts, 43 So.3d at 679, the issuance of advisory opinions is within the exclusive jurisdiction of the Florida Supreme Court pursuant to article V, section 3(b)(10), of the Florida Constitution, which provides that this Court “[sjhall, when requested by the attorney general pursuant to the provisions of Section 10 of Article IV, render an advisory opinion of the justices, addressing issues as provided by general law.” By contrast, with respect to any and all challenges to a legislative apportionment plan, no such specific grant of mandatory jurisdiction appears in article V — the provision of the constitution governing this Court’s jurisdiction — and thus the sole basis for determining whether the Court’s jurisdiction is exclusive for all apportionment challenges lies in the provisions of article III, section 16. Unlike article V, section 3(b)(10), which provides a specific grant of jurisdiction over a particular legal matter to this Court, article III, section 16, has never been interpreted to provide that this Court has exclusive jurisdiction over any and every challenge to the validity of a legislative apportionment plan.
Further, in Roberts, this Court had previously determined that the proposed amendments at issue satisfied the single-subject requirement and that the accompanying ballot titles and summaries complied with section 101.161, Florida Statutes (2008). 43 So.3d at 675-76. Both of these issues are questions of law that are resolved by an examination of the language of the proposed amendment, ballot title, and summary. By contrast, in the reapportionment context, many of the claims can — and do — raise factual issues, on which this Court is not equipped to rule during its thirty-day facial review. See, e.g., Apportionment I, 83 So.3d at 653 (“Based on the nature of the review that this Court is able to perform in a facial challenge, we find that there has been no demonstrated violation of the constitutional standards in article III, section 21, and we conclude that the House plan is facially valid.” (emphasis added)).
Finally, we note that although we declined in Apportionment I and Apportionment II to simply rubber-stamp the legislative apportionment plan and instead analyzed the new state constitutional standards in the context of our article III, section 16, review, our decisions in the 2012 reapportionment cases were based solely on objective evidence and undisputed facts in the limited record before the Court. As Justice Labarga observed in his separate concurrence in Apportionment I, “it is illogical to conclude that we should ignore a clear mandate now contained in the Florida Constitution to address these new provisions, especially where a different process is not available within the constitutional time frame.” Id. at 692 (Labarga, J., concurring). Further, as explained by Justice Lewis, it is clear that the new article III, section 21, standards present the possibility of future fact-intensive challenges that require proper development in a court “structurally equipped to conduct complex and multi-faceted analyses with regard to many factual challenges to the 2012 legislative reapportionment plan.” Id. at 689 (Lewis, J., concurring). Accordingly, for all these reasons, we deny the Legislature’s request for a writ of prohibition and conclude that the circuit court has subject matter jurisdiction to adjudicate *208 the Coalition’s claims. We turn next to the Legislature’s all writs arguments.
II. The All Writs Claims: Whether the Circuit Court’s Exercise of Jurisdiction Interferes with the Binding Judgment of This Court
The Legislature raises two arguments as to why this Court should exercise its all writs jurisdiction to preclude the Coalition’s claims from proceeding further on the basis that the circuit court’s exercise of jurisdiction interferes with the binding judgment of this Court, as well as with this Court’s complete exercise of its jurisdiction over legislative reapportionment under article III, section 16, of the Florida Constitution. The Legislature’s first all writs argument is that even assuming the circuit court has subject matter jurisdiction to hear the Coalition’s claims, the “declaratory judgment” rendered by this Court in Apportionment II, which “shall be binding upon all the citizens of the state,” pursuant to article III, section 16(d), of the Florida Constitution, precludes these subsequent challenges. The Legislature’s second argument is that the claims raised by the Coalition in the complaint are, in fact, identical to those already rejected by this Court in Apportionment I and Apportionment II. We address each argument in turn.
A. Whether the “Declaratory Judgment” Rendered By This Court Precludes Future Challenges
First, the Legislature argues that even if the circuit court has subject matter jurisdiction to hear the Coalition’s claims, since this Court rendered a declaratory judgment in Apportionment II determining the 2012 legislative apportionment plan to be valid, further challenges are barred. In support of its argument, the Legislature relies on article III, section 16(c)-(d), which provides as follows:
(c) JUDICIAL REVIEW OF APPORTIONMENT. Within fifteen days after the passage of the joint resolution of apportionment, the attorney general shall petition the supreme court of the state for a declaratory judgment determining the validity of the apportionment. The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within thirty days from the filing of the petition, shall enter its judgment.
(d) EFFECT OF JUDGMENT IN APPORTIONMENT; EXTRAORDINARY APPORTIONMENT SESSION. A judgment of the supreme court of the state determining the apportionment to be valid shall be binding upon all the citizens of the state.
Art. Ill, § 16, Fla. Const.
We reject the Legislature’s argument regarding the meaning of the declaratory judgment language in article III, section 16(d). In fact, in Apportionment I, the Legislature and the Attorney General advocated a different view, asserting that this Court should await challenges to the plan brought in the circuit courts over time. Indeed, the Senate took the position that “this Court should outright decline to review” whether the Senate map complied with the minority voting protection provision and contended that challenges based on article III, section 21, “should await challenges brought in the trial court after validation of the plans.” Apportionment I, 83 So.3d at 626; see also id. (observing that, at oral argument, “the attorney for the Senate stated that ‘[n]o rational person could expect seven appellate-court justices to resolve these extraordinarily tough factual issues’ ”).[3]
*209 Contrary to the Legislature’s current contention that subsequent challenges are precluded, however, this Court’s apportionment decisions have always contemplated the potential of subsequent challenges to the validity of the legislative apportionment plan. For example, in 1972, this Court specifically interpreted the “declaratory judgment” issued by this Court under article III, section 16, to be limited to a declaration of facial validity or invalidity. See In re Apportionment Law—1972, 263 So.2d at 808. In 2002, the Court expressly stated that subsequent fact-intensive challenges could be brought in a court of competent jurisdiction and similarly limited the declaratory judgment to one of facial validity or invalidity. See In re Apportionment Law—2002, 817 So.2d at 829. Thus, the proper interpretation of article III, section 16(c)-(d), consistent with this Court’s precedent, is that the declaratory judgment rendered by this Court pursuant to article III, section 16, is binding as to the facial validity of the apportionment plan, but not to subsequent fact-based challenges.
Indeed, we can render a declaratory judgment only as to the challenges that have been presented to the Court, which, under our article III, section 16, review, are facial in nature. In other words, pursuant to article III, section 16, this Court is charged with the responsibility to render a declaratory judgment as to the facial validity of a plan in order to provide certainty as to its facial validity prior to the upcoming election. Thus, all future attacks on the plan’s facial validity are precluded by the declaratory judgment rendered pursuant to article III, section 16(c)-(d), but fact-intensive claims that are not, and could never be, the subject of this Court’s article III, section 16, review cannot be precluded. Simply put, this Court did not render a declaratory judgment in Apportionment I or Apportionment II regarding such claims.
Contrary to the dissent’s argument that this Court’s prior interpretations of the declaratory judgment language in article III, section 16, are dicta, the Court’s interpretation of that provision dating back to 1972 was in actuality integral to its holding that attacks on the validity of the apportionment plan “based upon factual situations” were not properly before the Court. See In re Apportionment Law—1972, 263 So.2d at 808. In noting the proximity of the election, this Court specifically held in 1972 that it was “only determining the validity of the apportionment plan on its face” and that the “Florida Constitution contemplates that our judgment ... be limited to a declaration that the apportionment plan on its face is either valid or invalid.” Id. (emphasis added). The Court specifically concluded that, “[ujnder Fla. Const., art. Ill, § 16(c), F.S.A., we have rendered a ‘declaratory judgment’ determining the validity of the apportionment plan on its face” and explicitly contemplated the possibility of future proceedings “relating to the validity of the apportionment plan.” Id. at 822.
Similarly, in 2002, a majority of this Court explained that “the opponents to the 2002 redistricting plan may address the allegations and responses in a trial court of competent jurisdiction which can properly receive testimony, accept evidence, and render a judgment based upon the entirety of the facts,” In re Apportionment Law—2002, 817 So.2d at 836 (Lewis, J., concurring, joined by three other justices)— which is exactly what subsequently oc- *210 eurred in Forman, 826 So.2d 279. Certainly, if this Court’s interpretations dating back to 1972 as to the meaning of article III, section 16(c)-(d), were merely dicta, the subsequent challenges adjudicated in 1972, as well as the challenge brought in the trial court and eventually adjudicated in this Court in Forman in 2002, would have been improper. In other words, contrary to the dissent’s assault on the majority’s reasoning, it is the dissent that has construed one provision out of the entire constitutional scheme in a manner that is inconsistent with this Court’s precedent and with the purpose behind this Court’s article III, section 16, review.
Further, when the 2010 amendment was proposed and passed, the framers and voters were entitled to rely on this Court’s precedent and our consistent interpretation of the declaratory judgment required by article III, section 16, as a determination of only the facial validity of the plan. See Fla. Dep’t of Revenue, 918 So.2d at 264. In other words, while the framers and voters expanded greatly the restrictions on the Legislature in apportioning districts — and correspondingly expanded the scope of this Court’s review of the Legislature’s compliance with the constitutional redistricting requirements — they also reasonably expected that this Court would continue to adhere to its precedent that did not preclude subsequent, fact-based challenges after the Court’s declaratory judgment regarding the facial validity of the plan. The Legislature’s interpretation of this provision, which would preclude any challenges to the plan outside the thirty-day review period mandated by article III, section 16, directly contravenes the purpose of the 2010 amendment and undermines the will of the voters in placing more stringent standards on the redistricting process through the adoption of article III, section 21, of the Florida Constitution. As we have stated, the framers and voters clearly desired more judicial scrutiny, not less. See Apportionment I, 83 So.3d at 607 (“By virtue of these additional constitutional requirements, the parameters of the Legislature’s responsibilities under the Florida Constitution, and therefore this Court’s scope of review, have plainly increased, requiring a commensurately more expanded judicial analysis of legislative compliance.”).
The Legislature contends, however, that this Court’s refusal in its plurality decision in AppoHionment II to address claims that could have been, or were, brought in AppoHionment 7 is a recognition of the preclusive effect of the Court’s declaratory judgment. However, AppoHionment II, like AppoHionment I, was a facial review and concerned only facial challenges. See AppoHionment II, 89 So.3d at 881 (stating that the challengers had “failed to satisfy their burden of demonstrating any constitutional violation in this facial review” (emphasis added)). The plurality of this Court in AppoHionment II concluded that certain challenges were precluded because they “could have been addressed in the first proceeding.” Id. at 885 (emphasis added). Because fact-intensive challenges would not fall within this category, the rationale of AppoHionment II does not apply.
Moreover, the interpretation propounded by the dissent would render the article III, section 21, standards regarding “intent to favor or disfavor a political party or an incumbent” -without adequate review. In AppoHionment I, the dissent argued that this Court’s review was “extremely limited” and concerned only “the facial validity of the plan.” AppoHionment I, 83 So.3d at 696 (Canady, C.J., concurring in part and dissenting in part). Similarly, the Attorney General asserted that this Court “should not undertake a meaningful review of compliance with the new constitutional *211 standards,” but should instead await challenges to the plan brought in circuit courts over a period of time because the new standards were “too fact-intensive to be resolved in the instant original proceeding, which is limited to a narrow thirty-day window.” Id. at 609, 626 (majority opinion). Now, the dissent goes one step further, contending that any and all challenges to the plan are precluded by this Court’s “extremely limited” article III, section 16, facial review. The dissent’s interpretation, which has never before been suggested by this Court as the meaning of article III, section 16, would allow the Legislature to circumvent the constitutional standards regarding “intent to favor or disfavor a political party or an incumbent” by concealing evidence of that intent from the public, knowing full well that discovery of any documents demonstrating this unconstitutional intent would never be reviewed by a court. While we do not suggest that this occurred during the 2012 redistricting process, these are the exact types of claims that must be subject to a fact-finder’s scrutiny.
Accordingly, we conclude that the provision in article III, section 16(d), that this Court’s declaratory judgment is “binding upon all the citizens of the state” does not provide a basis for the Court to exercise all writs jurisdiction in this case. Assuming the claims raised by the Coalition in its complaint are not the same as those resolved by this Court in 2012, the circuit court’s ruling on the merits of those claims will not interfere with this Court’s complete exercise of jurisdiction under article III, section 16. The issue of whether the claims raised by the Coalition are, in fact, identical to those already rejected by this Court is the basis of the Legislature’s second all writs argument, which we address next.
B. Whether the Coalition’s Claims Are Identical to Those Already Rejected by This Court
As its second argument seeking to invoke this Court’s all writs jurisdiction, the Legislature contends that the claims presented in the Coalition’s complaint are identical to those presented to this Court in Apportionment II and, therefore, it is impossible for the Coalition to prevail on any of these claims without the circuit court overturning this Court’s factual and legal determinations in Apportionment II. The Legislature argues that this Court’s decision in Apportionment II was intended to adjudicate all claims that the Senate map violated constitutional standards and further contends that this Court’s review was not “facial” because the Court engaged in a comprehensive and detailed examination of evidence.
We conclude that the Legislature’s argument is without merit. As we have already explained, we repeatedly stated that the nature of our review in both Apportionment I and in the plurality decision in Apportionment II was a facial one. See, e.g., Apportionment I, 83 So.3d at 614 (stating that this Court was undertaking its “constitutionally mandated review of the facial validity of the Senate and House plans” (emphasis added)); id. (“Guided by both this Court’s precedent and a proper construction of the pertinent provisions contained within article III, we must determine whether the Legislature’s joint resolution is facially consistent with the specific constitutionally mandated criteria under the federal and state constitutions.” (emphasis added)); see also Apportionment II, 89 So.3d at 881 (“Finally, we conclude that the opponents have failed to satisfy their burden of demonstrating any constitutional violation in this facial review.” (emphasis added)).
*212 Further, the mere fact that we engaged in a detailed examination of objective and undisputed evidence to give meaning to the new state constitutional standards in the 2012 apportionment decisions does not lead to the conclusion that the fundamental nature of our review — that is, a facial review based on the limited record before the Court — was altered by the 2010 amendment introducing express new redistricting standards into the Florida Constitution. Although the Legislature contends that our review pursuant to article III, section 16, in effect, involved fact-finding, we repeatedly emphasized that our determinations in 2012 were based on the limited record before the Court and were constrained by the equally limited nature of the review this Court was able to conduct in the thirty-day facial proceeding mandated by article III, section 16. See, e.g., Apportionment I, 83 So.3d at 645 (“We conclude that on this record, any facial claim regarding vote dilution under Florida’s constitution fails.” (emphasis added)); id. at 651 (“We conclude that there are no objective indicia of intent to disfavor an incumbent on this record.” (emphasis added)); id. at 654-55 (‘While this failure is relevant to other defects in the plan, we conclude on this record that the Senate plan does not facially dilute a minority group’s voting strength or cause retrogression under Florida law.” (emphasis added)). Indeed, we even specifically noted that the type of information available during our article III, section 16, review proceeding was “objective data,” and we refused to consider an expert affidavit because we conducted our own “independent analysis using objective data.” Apportionment I, 83 So.3d at 612 & n. 13.
In essence, this Court in the 2012 apportionment decisions conducted our facial review of the validity of the apportionment plan in a “meaningful way.” Id. at 609. As Justice Labarga cogently explained in his concurring opinion in Apportionment I: “While it would have been preferable to have the luxury of more time, we were able, given advances in technology, to carefully examine both plans and make a facial determination based on this undisputed data within the time allotted by the constitution.” Id. at 692 (Labarga, J., concurring) (emphasis added). “It would be a complete and unjustified derogation of our constitutional obligation,” Justice Labarga stated, “if we ignore our constitutional mandate to examine the plans to determine whether they meet constitutional muster by simply saying we do not have the time.” Id. (Labarga, J., concurring); see also Apportionment II, 89 So.3d at 884 (describing Apportionment I as conducting a “meaningful facial review”); id. at 898 (Pariente, J., concurring) (“Restricted to only a facial review of the Legislature’s intent, there will be times when this Court may seriously question the drawing of certain lines or the partisan balance of the plan but nevertheless uphold it because impermissible intent has not been proven based on the limited nature of the record before us.” (emphasis added)). Likewise, Justice Lewis aptly articulated in his concurring opinion that, in 2012, “[a]s was the case in 2002, we [could] only conduct a facial review of [the] legislative plans and consider facts properly developed and presented in our record.” Apportionment I, 83 So.3d at 689 (Lewis, J., concurring) (emphasis added).
The Legislature’s argument for all writs relief on this basis is grounded in the assumption that the claims raised in the Coalition’s complaint are identical to those claims that were raised and resolved in this Court’s article III, section 16, proceedings. However, the complaint does not set forth the evidence or exact arguments that the Coalition intends to rely upon in support of its claims. The answer to the *213 question of whether the claims are, in fact, identical to those already decided by this Court will, in part, depend on the evidence discovered and introduced through the adversarial proceeding in the circuit court. The resolution of such factual issues indisputably could never have been the subject of this Court’s automatic thirty-day review.
As the circuit court cogently concluded with respect to whether the claims are the same, it is not possible to “make that determination from the pleadings themselves.” Importantly, however, the circuit court recognized that relitigation of the same claims would not be appropriate:
To the extent that the plaintiffs [ (the Coalition) ] seek only a rehash of facial arguments made before the Florida Supreme Court, they will be disappointed. But to the extent their claims are as-applied challenges to the plans, they are entitled to develop and to present relevant evidence to support their claims. The [Legislature] likewise [is] entitled to prepare and present contrary evidence in defense.
Whether the Coalition’s claims when litigated would amount to “a rehash of facial arguments made before” this Court remains to be seen. In any event, at this stage of the litigation, the Legislature’s assertion that the complaint presents identical claims does not provide a basis for this Court to grant relief through an extraordinary writ. We conclude that the Legislature has not shown — especially in light of the circuit court’s order — that allowing the circuit court case to proceed on these claims at this time would interfere with this Court’s exercise of jurisdiction under article III, section 16.
CONCLUSION
Based on the foregoing, we conclude that the Legislature has not met its burden of demonstrating that it is entitled to either a writ of prohibition or all writs relief because the circuit court has subject matter jurisdiction to adjudicate subsequent fact-based challenges to the legislative apportionment plan and because the circuit court’s exercise of this jurisdiction will not interfere with the binding judgment rendered by this Court in Apportionment II. Accordingly, we deny the Legislature’s petition for extraordinary relief.
It is so ordered.
LEWIS, QUINCE, and LABARGA, JJ., concur.
PERRY, J., specially concurs with an opinion.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

. Although both the Florida Senate and the Florida House of Representatives, as well as the Speaker of the House and President of the Senate, in their official capacities, have filed this petition — and the apportionment plan is a joint resolution approved by both legislative chambers — the lawsuit raises challenges only with respect to the Senate map and does not challenge the plan apportioning districts for the Florida House.

. On June 26, 2013, the National Council of La Raza filed a Notice of Voluntary Withdrawal, notifying this Court that it has withdrawn as a plaintiff in the circuit court case below and therefore is no longer a Respondent in this proceeding. We treated the Notice of Voluntary Withdrawal as a motion to withdraw as a party and granted the motion.

. We do not cite the position taken by the Attorney General and the Senate in Apportion- *209 merit I as authority for the interpretation adopted by the Court, but only to demonstrate that no party participating in the article III, section 16, proceeding in 2012 construed article III, section 16(d), as mandating a preclu-sive effect as to all subsequent challenges.